**BETA ANALYTICS INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Maden Tech Consulting, Inc., Intervenor.**

No. 04–556C.

United States Court of Federal Claims.

Nov. 23, 2005.

Mark L. Shaffer, Shaffer, Bock & Antonoplos, PLLC, Washington, D.C., for plaintiff.

James D. Colt, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Kathryn A. Bleecker, Assistant Attorney General, David M. Cohen, Director, and Peter D. Keisler, Assistant Attorney General, all of Washington, D.C., for defendant.

William L. Walsh, Jr., Venable, LLP, Vienna, Virginia, for intervenor.

### MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

The issue before the Court is the appropriate remedy in this matter, in light of the previous ruling that the government arbitrarily awarded a contract to intervenor Maden Tech Consulting, Inc. *See Beta Analytics Int'l v. United States,* 67 Fed.Cl. 384 (2005). The parties all agree that a re-procurement should be ordered for a new contract scheduled to begin on April 10, 2006, when the option year that has already been exercised expires. *See* Joint Status Report (Oct. 5, 2005) at 1. There is also a consensus that Beta Analytics International, Inc. ("Beta" or "BAI") be given the opportunity to apply for bid proposal costs, within forty-five days of the entry of a remedy order, with the government having forty-five days to respond. *Id.* The Court finds both suggestions to be proper and warranted under the circumstances.

■ Beta seeks additional relief, which is opposed by the other parties. Beta would have the Court essentially oversee the re-procurement process, retaining jurisdiction to police compliance with this order and directing the scope and evaluation methodology for the new solicitation. *Id.* at 2–3. But courts are not administrative or executive bodies, and must be careful not to usurp the policymaking role of federal agencies. Although the power granted our Court in this area is rather broad—the power to "award any relief that the court considers proper, including declaratory and injunctive relief," 28 U.S.C. § 1491(b)(2) (2000)—a court has to know its limitations. Courts generally lack the expertise necessary to judge whether a particular combination of functions in an agency contract is appropriate, and to the extent this determination requires discretion, it must be left to the more politically-accountable branches of our government. Oversight of the re-procurement process, or second-guessing the scope and eligibility requirements of the new solicitation, are not properly within the normal province of a court.

Two of BAI's specific requests do merit closer consideration, however. Beta asks that the Court "direct DARPA to terminate Maden Tech's Contract at the end of the current option year which closes on April 9, 2006, or as soon as the re-procurement is complete, [whichever] occurs last." Joint Status Report at 3. Such a direction may be superfluous, as the re-procurement necessarily implies the termination of the existing contract. But the Court will make clear that the government is enjoined from exercising any further option years under the arbitrarily-awarded Maden Tech contract.

More problematic is BAI's request that the government be ordered "to devise the re-procurement in a manner that protects BAI from any competitive disadvantage due to the delay in remedial action." *Id.* at 2. The nub of this request is that BAI was the incumbent when the initial proposals were evaluated, but due to the government's arbitrary procurement decision Maden Tech now occu-

pies that ground. It cannot be denied that Maden Tech's incumbency, and its key personnel who had been on the BAI payroll when the initial evaluation occurred, are the fruits of the government's arbitrary decision. Or, to put it another way, the loss of incumbency and of the key personnel used in its proposal are aspects of BAI's injury caused by the government's arbitrary action. But is it both possible and advisable for a court to redress such injury?

■ As to the matter of incumbency generally, it is really not the status, but the *experience,* that is beneficial in a properly-conducted competitive procurement process. Whether or nor it should have gained this experience, Maden Tech now has it. And although this nineteen months' worth of experience was not on its résumé at the time Maden Tech first submitted its proposal for the contract at issue in this case, it in no way diminishes BAI's nearly four years' worth of experience under the predecessor contract. *See* Ex. 2 to Complaint. Maden Tech may be in a better competitive posture, but BAI is no worse than it was. Because this experience is not a zero-sum game, and recognizing the practical difficulties in directing the re-procurement process to be somehow adjusted to nullify Maden Tech's on-the-job experience, the general matter of its incumbency is not a proper subject for relief.

■ In the specific area of BAI's loss of key personnel, the injury to BAI is direct and absolute (as opposed to relative). Each of the key personnel who stayed on with Maden Tech represents both Maden Tech's gain and BAI's loss. The evaluation of the key personnel proposed was a critical aspect of the arbitrary procurement process, *see Beta Analytics Int'l,* 67 Fed.Cl. at 401–03, 407–08, and the scoring methodology turned on whether all or a majority of the key personnel were currently employed by the offerors. *See id.* at 401–02. The very issue of the loss of key personnel was highlighted as an irreparable injury in BAI's preliminary injunction brief, *see* Mem. Supp. Prelim. Inj. at 14, and was discussed at the preliminary injunction hearing, Tr. (Apr. 7, 2004) at 92–98. And were the Court ordering a re-evaluation of the proposals, instead of a re-procurement, all parties recognized that an injunction could issue requiring the re-evaluation to be performed based on the employment status of key personnel as of the date the proposals were submitted. *Id.* at 93.

Should the fact that a re-procurement is at hand make a difference for the range of available relief? Back at the preliminary injunction hearing, BAI's counsel recognized that it would have been a "fiction" for his client to "get credit for people that no longer work for" it in the context of a re-procurement, *id.* at 98. Nevertheless, the Court, in denying the motion for a preliminary injunction, acknowledged the possibility that the issue could be addressed at this stage. *Id.* at 138. On the other hand, the Court is not aware of any precedent for an order requiring the evaluation of proposed key personnel to be based on anything other than the actual state of affairs at the time of a proposal. Moreover, if a procurement process is to be rational, relevant facts can hardly be ignored—to do so would both distort the decision-making process and introduce a fatal complication to a judicial review process which is based on validating factual findings. *Cf. Arch Chemicals, Inc. v. United States,* 64 Fed.Cl. 380, 400–01 (2005) (holding that the government could not ignore certain costs when evaluating offers). A requirement that BAI be treated as if former employees were still on its payroll would be counterfactual and risk the overestimation of BAI's capabilities—a very pointed risk, given that the services to be performed relate to national security. *See* 28 U.S.C. § 1491(b)(3) (in bid protests, our Court "shall give due regard to the interests of national defense and national security").

To avoid this risk, an alternative would be to deprive Maden Tech of this particular advantage of incumbency, and not allow it to claim key personnel who were previously proposed by BAI. Perhaps such an order could be justified as an injunctive analogue to unjust enrichment or restitution. *Cf.* 1 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 2.20 (3d ed.2004). But an order to ignore the capabilities of a particular offeror, even though these capabilities were obtained via arbitrary government action, still intro-

duces the complications of the counterfactual world, discussed above. When one takes into account the public's interest in receiving the best value in public services, it is clear that injunctive relief which orders a government agency to consider facts to be other than as they are should not be a preferred option.

But the fact remains that the Navy's arbitrary award of the contract injured BAI by causing the latter to lose key personnel to a competitor. This injury is tangible, and if unaddressed, would give the ensuing re-procurement the taint of arbitrariness. The Court suspects that the Navy could mitigate the harm posed by BAI's loss of key personnel by utilizing an evaluation methodology that places less emphasis on key personnel who are currently employed by an offeror. The Court is hesitant to require any particular methodology, however. It may well be the case that an offeror's track record of being able to attract—or, better yet, of once having employed—a certain quality of key personnel can be a suitable proxy for having those key personnel already on staff. But it is also likely that there is at least *some* greater risk that proposed key personnel who are not already employed by an offeror will turn out to be unavailable. Thus, for good reason, this is the sort of determination that is normally left to the expertise of agency procurement personnel, as it involves wisdom and knowledge beyond the normal ken of courts.

Nor does the Court find appropriate a vague, general command that the Navy evaluate the proposals submitted for the re-procurement "in a manner that protects BAI from its loss of competitive advantage due to its loss of . . . those key personnel previously bid." Joint Status Report at 2 (BAI's additional statement). A remedial order from the Court should be as clear and specific as possible. *Cf. Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir.2003) (vacating injunction that "did not carefully address only the circumstances of the case"); *Hartford–Empire Co. v. United States*, 323 U.S. 386, 410, 65 S.Ct. 373, 89 L.Ed. 322 (1945) (rejecting vaguely-worded injunctions in an antitrust context). If injunctive relief is not conducive to a clear

command to the government to either do X or not do Y, it should be avoided. An injunction lacking in clarity is a prescription for continued court involvement, drawing courts into the sort of administrative function that is not rightfully theirs.

The injury to BAI caused by the arbitrary award of the contract includes BAI's loss of key personnel, an injury that would be compounded were Maden Tech to be advantaged in the re-procurement process as a consequence. Beta is thus entitled to a declaration to the effect that its injury due to the arbitrary award would persist and be magnified were this consequence to result. It is expected that the Navy will act in good faith to avoid this result. If BAI believes that the methodology adopted in the re-solicitation fails to mitigate Maden Tech's arbitrarily-obtained advantage in the category of key personnel, it can enforce its rights in a separate, pre-award challenge. But the cause of judicial economy compels the Court to eschew an attempt to solve a problem that may never arise, and concerning which the government is advised to make every effort to avoid.

The Court hereby **ORDERS** the following:

1. The Court DECLARES that the Navy acted arbitrarily and capriciously in its evaluation of proposals submitted in response to Solicitation No. N00174–03–R–0044, and in its award of a contract to Maden Tech Consulting, Inc. pursuant to Solicitation No. N00174–03–R–0044.

2. The United States, including the Department of the Navy, the Defense Advanced Research Projects Agency (DARPA), its Contracting Officer, and its other officers, agents, servants, employees, and representatives, and all persons acting in concert and participating with them respecting the subject procurement, be and they are hereby PERMANENTLY RESTRAINED AND ENJOINED from exercising another option year under the contract awarded to Maden Tech Consulting, Inc. pursuant to Solicitation No. N00174–03–R–0044.

3. The United States SHALL CONDUCT A RE–PROCUREMENT to replace Solicitation No. N00174–03–R–0044, upon a

time schedule that will allow the new contract to be awarded with a start date of April 10, 2006, when the current option year of the contract issued under Solicitation No. N00174–03–R–0044 expires.

4. The Court DECLARES that the Navy's arbitrary and capricious award of a contract to Maden Tech Consulting, Inc., pursuant to Solicitation No. N00174–03–R–0044, has resulted in injury to Beta Analytics International, Inc., in the form of the loss of key personnel to Maden Tech Consulting, Inc.; and that this injury continues to exist and continues to render the procurement process, including the mandated re-procurement, arbitrary until the United States mitigates the injury through the adoption of an appropriate evaluation methodology for use in the re-procurement.

5. Plaintiff shall have forty-five days from the date of this order to submit an application for bid preparation and proposal costs. The United States may file a response to this application within forty-five days of service of the application.

**IT IS SO ORDERED.**